UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESENIA VILLEGAS, | No. 1:17-cv-01201-DAD-JLT |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT DEFENDANTS' MOTIONS TO DISMISS |
| CSW CONTRACTORS, INC., an Arizona corporation; JOHN OFTEN, an individual; and DOES 1 through 50, | (Doc. Nos. 5, 6, 7) |
| Defendants. | |

This matter is before the court on plaintiff's motion to remand (Doc. No. 5), defendant CSW Contractors, Inc.'s motion to dismiss (Doc. No. 6), and defendant John Often's motion to dismiss. (Doc. No. 7.) Attorney Hugo Gamez appeared on behalf of plaintiff. Attorney Alice Kwak appeared on behalf of defendants. Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will grant plaintiff's motion to remand, and deny as moot defendants' motions to dismiss.

**BACKGROUND**

Plaintiff's complaint alleges as follow. Plaintiff Yesenia Villegas began working for defendant CSW Contractors, Inc. ("CSW") in August 2015. (Doc. No. 1, Ex. 1 at ¶ 9.) On August 28, 2015, plaintiff was working at a construction site when she and other employees began exhibiting symptoms consistent with exposure to Danitol, a pesticide that was sprayed at a

1

neighboring pistachio orchard.  (*Id.* at ¶ 11.)  Plaintiff's symptoms included burning nostrils and lips, tight chest, nausea, and heavy breathing, for which she and other employees sought immediate medical treatment from the Kern County Fire Department.  (*Id.*)  Plaintiff thereafter was required to attend follow-up doctor's appointments.  (*Id.* at ¶ 12.)  Following her work-related injury, plaintiff's supervisor, defendant John Often, repeatedly told plaintiff that she needed to quit her job and he began cutting her work hours.  (*Id.* at ¶¶ 13–14.)  On or around September 18, 2015, Often accused plaintiff of "milking this job" and feigning her work-related injury.  (*Id.* at ¶ 14.)  That same day, plaintiff confronted Often about his accusations.  (*Id.* at ¶ 15.)  On September 20, 2015, plaintiff spoke with her union representative about filing a grievance.  (*Id.* at ¶ 16.)  The following day, on September 21, 2015, Often fired plaintiff.  (*Id.* at ¶ 17.)  Plaintiff alleges that she was wrongfully terminated and retaliated against for her work-related injury, and for complaining to Often and her union representative about Often's accusations.  (*Id.* at ¶ 18.)

        Plaintiff filed this action in Kern County Superior Court on July 27, 2017 against CSW and John Often, bringing ten state causes of action under various provisions of the California Fair Employment and Housing Act, the California Labor Code, and California's Unfair Competition Law, as well as claims for wrongful discharge and intentional infliction of emotional distress.  (Doc. No. 1, Ex. 1.)  The sole claim brought against both defendants is for intentional infliction of emotional distress; all other causes of action are brought against defendant CSW only.

        On September 6, 2017, defendants removed the action to this court on the grounds that defendant Often is a fraudulently joined "sham defendant," and that diversity jurisdiction exists because plaintiff and CSW are citizens of different states and there is at least $75,000 in controversy.  (Doc. No. 1.)  Plaintiff moved to remand the case to state court on September 27, 2017.  (Doc. No. 5.)  Plaintiff contends that defendant Often is not a sham defendant and that defendants have not shown that her intentional infliction of emotional distress claim against Often fails.  Plaintiff thus argues that remand is appropriate because Often's California citizenship defeats complete diversity. On September 28, 2017, defendants each filed separate motions to dismiss plaintiff's complaint.  (Doc. Nos. 6, 7.)  On November 20, 2017, plaintiff filed

oppositions to the motions to dismiss. (Doc. Nos. 13, 14.) On November 21, 2017, defendants filed an opposition to plaintiff's motion to remand. (Doc. No. 21.) On November 28, 2017, defendants filed replies in support of their respective motions to dismiss (Doc. Nos. 16, 17), and plaintiff filed a reply in support of her motion to remand. (Doc. No. 18.)

**LEGAL STANDARD**

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a).

Section 1447(c) of Title 28 of the United States Code provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004).

An action may be removed to federal court on the basis of diversity jurisdiction only where there is complete diversity of citizenship. *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). However, the Ninth Circuit has recognized an exception to the complete diversity requirement where a non-diverse defendant has been "fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). If a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d

1203, 1206 (9th Cir. 2007). If the court finds that the joinder of the non-diverse defendant is fraudulent, that defendant's citizenship is ignored for the purposes of determining diversity. *See, e.g.*, *Morris*, 236 F.3d at 1067.

There is a general presumption against fraudulent joinder, *Hamilton Materials, Inc.*, 494 F.3d at 1206, and the burden on the defendant opposing remand on the basis of an alleged fraudulent joinder is a "heavy one." *Davis v. Prentiss Props. Ltd., Inc.*, 66 F. Supp. 2d 1112, 1113 (C.D. Cal. 1999). "Fraudulent joinder must be proven by clear and convincing evidence," and district courts must resolve all disputed questions of fact in favor of the plaintiff. *Hamilton Materials, Inc.*, 494 F.3d at 1206; *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant. *See Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001); *see also Lieberman v. Meshkin, Mazandarani*, No. C-96-3344 SI, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996) ("The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so."). Remand must be granted unless the defendant establishes that plaintiff could not amend her pleadings to cure the purported deficiency. *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009).

**DISCUSSION**

Because plaintiff's motion to remand challenges this court's subject matter jurisdiction, the court addresses that motion first. For the reasons discussed below, the court concludes that defendant Often has not been fraudulently joined, and that this court therefore lacks diversity jurisdiction. Because this case must be remanded, defendants' motions to dismiss are moot.

**A. Fraudulent Joinder**

Plaintiff brings a single cause of action against defendant Often for intentional infliction of emotional distress ("IIED"). (Doc. No. 1, Ex. 1 at ¶¶ 83–88.) In the notice of removal, defendants contend that Often was fraudulently joined, and his citizenship must be disregarded, because plaintiff cannot maintain an IIED cause of action against him. (Doc. No. 1 at 10–11.) Defendants challenge plaintiff's IIED claim on two grounds. First, they contend that the claim is

4

preempted by California's Workers' Compensation Act. (*Id.* at 11–14.) Alternatively, they argue that plaintiff has failed to adequately allege that Often engaged in extreme and outrageous conduct, or that plaintiff suffered severe emotional distress, as required for an IIED claim. (*Id.* at 14–15.) The court addresses each of these arguments in turn.

      a. <u>Workers' Compensation Act Preemption</u>

The Workers' Compensation Act ("WCA") provides the "exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment." Cal. Lab. Code § 3601(a). Although "an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation," an employee may otherwise maintain an IIED claim if the employer's conduct (1) contravenes fundamental public policy; or (2) exceeds the risks inherent in the employment relationship. *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992). The parties agree that the WCA exclusivity provisions generally preempt IIED claims, but whether plaintiff's IIED claim falls within one of the exceptions articulated above is disputed.

In their original notice of removal, defendants point to several cases[1] interpreting the California Supreme Court's decision in *Miklosy v. Regents of University of California*, 44 Cal. 4th 876 (2008) to support removal here. (Doc. No. 1 at 12–13.) According to defendants, the decisions upon which they rely indicate that the first of the exceptions noted above, the fundamental public policy exception, permits only a *Tameny* claim[2] and not an IIED claim. (Doc. No. 1 at 12–13.) Plaintiff responds by noting that the decisions relied upon by defendants involved only whistleblower claims, rather than discrimination and harassment claims as are at issue here, and are therefore distinguishable. (Doc. No. 5-1 at 12.)

/////

---

[1] *Cole v. Fair Oaks Fire Protect. Dist.*, 43 Cal.3d 148 (1987); *Shoemaker v. Myers*, 52 Cal.3d 1 (1990); *Langevin v. Federal Express Corp.*, No. CV 14-08105 MMM, FFMX, 2015 WL 1006367 (C.D. Cal. Mar. 6, 2015).

[2] A *Tameny* claim is a common law action against an employer for wrongful termination in violation of public policy. *See Miklosy*, 44 Cal. 4th at 900; *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980).

5

The court finds plaintiff's argument persuasive.  The California Court of Appeals recently clarified that in *Miklosy* the court held only held that *whistleblower* retaliation claims did not fall within the fundamental public policy exception.  *Light v. Cal. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017).  The state appellate court in *Light* stated it was "unwilling to abandon the longstanding view that unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity."  *Id.* at 101.  The court therefore concluded that *Miklosy* "did not remove the jurisprudential basis on which numerous authorities have held that allegations of *FEHA* discrimination and retaliation did state such an exception [to WCA exclusivity]."  *Id.* Accordingly, the court found that the plaintiff employee could pursue an IIED claim where the conduct at issue violated FEHA and also satisfied the elements of an IIED claim.  *Id.*

District courts within the Ninth Circuit have also come to the same conclusion, finding "that IIED claims based on alleged discrimination do fall outside the normal course of an employer-employee relationship and thus are not barred by the [WCA's] exclusivity provisions." *Zolensky v. Am. Medflight, Inc.*, No. 2:16-cv-00788-KJM-KJN, 2017 WL 1133926, at *7–8 (E.D. Cal. Mar. 27, 2017) (finding plaintiff's IIED claim did not fall outside the normal course and scope of an employment relationship because plaintiff did not allege discrimination); *see also Vanderhule v. Amerisource Bergen Drug Corp.*, No. SACV 16-2104 JVS (JCGx), 2017 WL 168911, at *4 (C.D. Cal. Jan. 17, 2017) (noting that "California district courts have generally not applied *Miklosy* to discrimination claims" and collecting cases); *Negherbon v. Wells Fargo Bank*, No. 15-cv-02368-JCS, 2015 WL 6163570, at *10 (N.D. Cal. Oct. 21, 2015) (holding that the plaintiff's IIED claim was not barred by WCA exclusivity, where plaintiff had based her IIED claim on allegations of harassment and discrimination on the basis of a medical condition); *Elowson v. Jea Senior Living*, No. 2:14-cv-02559-JAM-KJN, 2015 WL 2455695, at *1, *4–5 (E.D. Cal. May 22, 2015) (finding that plaintiff's IIED claim for harassment and discrimination on the basis of gender, medical conditions, and lawful taking of protected leave were not preempted because such conduct fell outside the scope of employment).

Here, plaintiff's IIED claim against defendant Often is based on his "discriminatory and retaliatory actions against Plaintiff." (Doc. No. 1, Ex. 1 at ¶ 84.) She alleges that her "work-related injury, need for further treatment, doctor visits, complaining to Often about his accusations that Plaintiff was faking her work-related injury and her union grievance" were motivating factors in defendants' decision to terminate her employment. (*Id.* at ¶ 18.) Resolving all doubts in plaintiff's favor, the court finds that plaintiff's IIED claim is based on allegations of discrimination, and such a claim is not preempted by the WCA.

        b.   <u>Failure to State a Claim</u>

Defendants argue in the alternative that even if plaintiff's IIED claim against Often is not preempted by the WCA, Often has been fraudulently joined because plaintiff fails to allege extreme and outrageous conduct by him, and fails to properly allege plaintiff's suffering of severe emotional distress. (Doc. No. 1-1 at 14–15.) Under California law, the elements for an IIED claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).

Regardless of whether plaintiff will ultimately prevail on her IIED claim, the court cannot conclude at the pleading stage that plaintiff has no possibility of recovery against Often on that claim. *See, e.g.*, *Charles v. ADT Sec. Servs.*, No. CV 09-5025 PSG (AJWx), 2009 WL 5184454, at *2 (C.D. Cal. Dec. 21, 2009) (holding it could not conclude that plaintiff had no possibility of recovery on IIED claim where employer required plaintiff to return to work despite his disability); *Barsell v. Urban Outfitters, Inc.*, No. CV 09-02605 MMM (RZx), 2009 WL 1916495, at *7 (C.D. Cal. July 1, 2009) (noting jury might conclude that terminating plaintiff while she was hospitalized for depression was conduct outside the normal employment relationship and designed to cause plaintiff distress). In this regard, whether a particular action is sufficiently extreme and outrageous is typically a question of fact under California law. *See Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 672 (2013) ("Thus, whether conduct is 'outrageous' is

7

1   usually a question of fact."); *Ragland v. U.S. Bank Nat'l Assoc.*, 209 Cal. App. 4th 182, 204

2   (2012) (same); *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1045

3   (2009) ("In the usual case, outrageousness is a question of fact."); *Hawkins v. Bank of America*

4   *N.A.*, No. 2:16-cv-00827-MCE-CKD, 2017 WL 590253, at * (E.D. Cal. Feb. 14, 2017).  Plaintiff

5   has alleged that Often repeatedly told her she should quit her job because of her work-related

6   injury, that he reduced her work hours subsequent to her suffering her work-related injury, and

7   accused plaintiff of faking her injury and "milking the system." (Doc. No. 1, Ex. 1 at ¶¶ 13–14.)

8   Three days after plaintiff confronted Often about his statements, he terminated her.  (*Id.* at ¶¶ 15–

9   17.)  A trier of fact could find this alleged conduct by defendant Often to be extreme and

10  outrageous.

11         Plaintiff has also alleged that defendants' conduct has caused her severe emotional

12  distress, including depression, anxiety, humiliation, and mental and physical pain.  (*Id.* at ¶¶ 85–

13  87.)  At oral argument, plaintiff's counsel added that plaintiff has experienced panic attacks and

14  sleeplessness stemming from her inability to meet her financial obligations.  Counsel also

15  represented that plaintiff has been unable to seek professional treatment from a psychologist or

16  therapist due to her lack of financial resources. The court finds that plaintiff has sufficiently

17  alleged severe emotional distress.  Even were the court to find these allegations insufficient for

18  some reason, defendants have not demonstrated plaintiff would be unable to amend her complaint

19  to cure any such deficiency.  *See Barsell*, 2009 WL 1916495, at *7 ("District courts have . . .

20  granted motions to remand where the complaint failed to allege outrageous conduct, because it

21  was possible that plaintiff could cure the deficiency by amendment.").  In sum, defendants have

22  not met their heavy burden of demonstrating that there is no possibility plaintiff could prevail on

23  her IIED claim against Often.  Plaintiff's motion to remand will therefore be granted.

24  **B. Attorney's Fees**

25         Plaintiff requests attorneys' fees and costs in the amount of $4,500 incurred as a result of

26  removal.  (Doc. No. 5-1 at 18.)  District courts are given discretion by statute to award such fees

27  if the matter is remanded.  28 U.S.C. § 1447(c) ("An order remanding the case may require

28  payment of just costs and any actual expenses, including attorney fees, incurred as a result of the

removal."). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the court does not find the applicable law so clear as to foreclose the seeking of removal, especially in light of the evolving state of the law regarding WCA exclusivity. Although the court finds that Often is not a sham defendant, defendants did not lack an objectively reasonable basis for removal. Plaintiff's request for attorneys' fees will therefore be denied.

## CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion to remand (Doc. No. 5) is granted;
2. Defendants' motions to dismiss (Doc. Nos. 6, 7) are denied as moot;
3. This matter is remanded to Kern County Superior Court for all further proceedings; and
4. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: **December 8, 2017**

UNITED STATES DISTRICT JUDGE